# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN DURBROW and KAREN STEINGRABER,

      Plaintiffs,

   v.                               Case No. 05-C-483

MIKE CHECK BUILDERS, INC. and
INTEGRITY MUTUAL INSURANCE CO.,

      Defendants.

## DECISION AND ORDER

This case is presently before me on defendant Integrity Mutual's motion for declaratory and summary judgment. Integrity Mutual ("Integrity") has thus far provided a defense to defendant Mike Check Builders and seeks an order finding no coverage under its insurance policies and no further duty to provide a defense. Mike Check Builders ("Check Builders") opposes the motion, as do the plaintiffs. I conclude that damage caused to Check Builders' own work is not covered–which the parties seem to concede. I also conclude that damage caused to materials supplied by the plaintiffs, but installed by Check Builders, is not covered. However, the policies do not exclude damage caused to the work of subcontractors, and the plaintiffs argue that such damages were sustained here. Because there are outstanding issues of fact as to such damages, Integrity's motion will be denied on that score but will be granted in all other respects.

**I. Background**

In 1998, plaintiffs John Durbrow and Karen Steingraber, husband and wife, hired Mike Check Builders to build them a summer home in Manitowoc County. Although Check Builders

provided most of the materials and supervised the project, plaintiffs themselves provided some materials, including $35,000 worth of custom windows, as well as kitchen cabinets, flooring, and the like, which Check then installed. (Durbrow Aff., ¶ 3.) Subcontractors also performed work on the house, including painting, insulation and plastering. (Durbrow Aff., ¶ 7.) Due to problems with the initial construction, Check Builders agreed in 2001 to provide fairly substantial repairs, which necessitated the removal and replacement of siding as well as the installation of a vapor barrier. The fix did not take, however, and the plaintiffs noticed new water-related problems in 2004. Water infiltrated the house and damaged the interior, including the materials the plaintiffs had themselves contributed to the house. The plaintiffs state that the windows will need to be replaced and that their carpeting has suffered water damage. (Durbrow Aff., ¶ 8.)

**II. Analysis**

Integrity asserts that the policies it issued to Check Builders were standard commercial general liability policies that do not insure against what are essentially business risks. According to Integrity, all of the damage allegedly caused in this case resulted from Check Builders' faulty workmanship, and such damages are excluded by the relevant policies. Integrity has moved for summary judgment, asserting that no outstanding issues of material fact exist and that its policies do not provide coverage–it thus wants a declaration that no coverage exists and that its duty to defend Check Builders is at an end.[1]

---

[1] "If some coverage exists, the insurer must defend the entire action, even though certain allegations may fall outside the scope of coverage." *U.S. Fire Ins. Co. v. Good Humor Corp.,* 496 N.W.2d 730, 737 (Wis. Ct. App. 1993).

2

**1. "Business risks" and CGL policies**

Integrity first asserts that as a general principle, commercial general liability policies do not insure against business risks arising from a contractor's defective work. *Jacob v. Russo Builders,* 592 N.W.2d 271 (Wis. Ct. App. 1999). That is, if Check Builders provided substandard work, it would not be insured against costs required to fix it: "[t]he so-called 'business risk' refers to the expenses of repair or replacement incurred by the contractor in the event his work does not live up to its warranties. . . . The other risk refers to injury to people and damage to property caused by the contractor's faulty workmanship." *Bulen v. West Bend Mut. Ins. Co.,* 371 N.W.2d 392, 393 (Wis. Ct. App. 1985). Thus, the policy covers injury or damages caused to *other* products or people, not for damage to Check's own work; to construe the policy otherwise would turn the commercial liability insurance into a performance bond. As the *Bulen* court summarized it:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 394 (quoting *Weedo v. Stone-E-Brick, Inc.,* 405 A.2d 788, 791 (N. J. 1979)). Integrity asserts that since the plaintiff's house is all that is alleged to have suffered damage, and because the house was built by Check Builders, no coverage exists.

The plaintiffs actually agree with Integrity's general interpretation of the policies' coverage and concede that there is no coverage to repair or replace work performed by Check Builders. Thus,

3

it seems the parties are in agreement that at least some part of the damages–perhaps *most* of the damages–at issue here are not covered by the relevant policies. But in Check Builders' and the plaintiffs' view, Integrity still has a duty to defend because more was damaged than just the work Check Builders performed. In particular, plaintiffs note that their carpet and windows were damaged–both items which the plaintiffs personally purchased and had Check Builders install. They also claim that the work of subcontractors was damaged. Thus, this is not a case where the contractor is trying to obtain insurance coverage merely for its own repair work, it is a case in which the contractor is trying to obtain coverage and defense for damages its work caused to *other* property.

Not surprisingly, Integrity rejects this approach in favor of a *gestalt* view of the situation. In its view, Check Builders was hired to build a house, not to construct a series of distinct components consisting of walls, windows, ceilings and carpets. That is, any damage here was caused to the *house*, which Check built, even though some of the components may have been provided by the plaintiffs personally and even though the damage may have occurred from work performed after the house was completed. It simply does not matter, in Integrity's view, who provided which components of the house because any damage caused to the house was within the business risk Check Builders assumed.

In sum, the parties agree that the policies at issue here do not cover damage to the contractor's own work. The narrower questions presented are: (1) whether there is coverage for damage to components of a house, such as carpeting and windows, that were installed by the contractor but which were provided by the homeowners themselves; and (2) whether coverage exists

4

for damage to work performed by subcontractors rather than the insured. To answer these questions requires analysis of the policy language itself.

**2. There was an "occurrence" triggering coverage**

Integrity argues the insurance covers "property damage" that is "caused by an 'occurrence'" and that there is no coverage under the relevant policies because there was no "occurrence."[2] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Integrity asserts that the plaintiffs are really suing for breach of contract and that a breach of contract cannot constitute an "accident." The plaintiffs and Check Builders protest that it does not matter what legal theory they employ–what matters is whether the events they claim happened are covered by the language of the relevant policies. In their view, the fact that an "accident" might also constitute grounds for breach of contract does not somehow take it out of the policy's purview.

I conclude that the allegations here do constitute an "occurrence" giving rise to coverage. The plaintiffs allege that Check Builders' defective work caused repeated exposure to moisture, which ruined parts of their home. This is, by the definition's plain language, "continuous or repeated exposure to substantially the same general harmful conditions." An appellate court in Kansas recently reached the same conclusion in a similar case. In *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.,* 104 P.3d 997, 1003 (Kan. Ct. App. 2005), the homeowners alleged that the builder's faulty work led to moisture seepage. The court found that constituted an "occurrence" because "[t]he faulty materials and workmanship . . . caused a continuous exposure of the

---

[2]The CGL policies are found at "Businessowners Liability Coverage Form" sections of Exhibits A through F to the affidavit of Kenneth Baumgart. All citations to policy language quoted in this opinion are found there.

5

substructure of the Steinberger home to the general harmful conditions inherently imposed by moisture from the elements in Kansas." *Id.* The court concluded that "property damage to surrounding structural components caused by moisture seepage resulting from faulty work constitutes an occurrence under this general contractor's CGL policy because: (i) the policy definition specifically includes within the term 'accident' the 'continuous or repeated exposure to substantially the same general harmful conditions.'" *Id.*

Moreover, Integrity's reliance on the breach of contract argument finds little basis in the law of Wisconsin. The Wisconsin Supreme Court has made clear that the distinction between tort and contract coverage is a creature of the policy language itself rather than an operation of any more general legal principles. In *American Family Mut. Ins. Co. v. American Girl, Inc.,* the court set forth the issue as follows:

> American Family argues that because Pleasant's claim is for breach of contract/breach of warranty it cannot be an "occurrence," because the CGL is not intended to cover contract claims arising out of the insured's defective work or product. We agree that CGL policies generally do not cover contract claims arising out of the insured's defective work or product, but this is by operation of the CGL's business risk exclusions, not because a loss actionable only in contract can never be the result of an "occurrence" within the meaning of the CGL's initial grant of coverage. This distinction is sometimes overlooked, and has resulted in some regrettably overbroad generalizations about CGL policies in our case law.

2004 WI 2, 673 N.W.2d 65, 75 (Wis. 2004)*; see also Westfield Ins. Co. v. Weis Builders, Inc.,* 2004 WL 1630871, *5 (D. Minn. 2004) (rejecting application of general "business risk" doctrine in favor of applying CGL's actual language). Thus, Integrity's position that breach of contract is not a covered "occurrence" is unsound. Because I find the reasons given by the Kansas court in *Lee Builders,* 104 P.3d at 1003 to be persuasive, I find that the plaintiffs have adequately alleged an

6

"occurrence" that triggers coverage.[3]  Thus, if Integrity is not liable, it must rest on one or more relevant coverage exclusions.

**3. Exclusion j**

Integrity first relies on Exclusion j, which excludes property damage due to the insured's rendering of any professional services, which include such things as legal, accounting or advertising services, medical, optometry, and the like. Most pertinent here are "preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications."[4]

The allegations in this case are that Check Builders' work was defective and that the defective work resulted in damage to other parts of the house. There is no indication that any of the

---

[3] I also note the following pertinent observation from a commentator:

> For example, consider a home that is subject to water infiltration due to defective installation of the windows and exterior cladding. Water infiltrates the home and causes damage to interior finishes, rotting of the wooden structural members, and mold, requiring that the home be torn down and rebuilt.
>
> Obviously, there has been "physical injury to tangible property," the home, but at the same time, that home is the subject matter of the contract between the homebuilder and the homeowner. At that point, there has clearly been an "occurrence" of "property damage" as those terms are defined in the policy, and to determine the scope of insurance coverage for the loss, you must look to the policy's property damage exclusions. If the homebuilder constructed the home through subcontractors, there is likely a considerable amount of insurance coverage available.

*Patrick J. Wielinski,* "The New Business Risk Rationale: 'Economic Loss,' 'Property Damage' and the 'Economic Loss Rule' (Part 2)," International Risk Management Institute, December 2003. (http://http://www.irmi.com/Expert/Articles/2003/Wielinski12b.aspx).

[4] The relevant policy exclusions are found beginning at page 4 of "Businessowners Liability Coverage Form," which is part of exhibits A through F.

7

plaintiffs' claimed damages stemmed from the preparing or approving of maps, surveys, designs, and the like, and Integrity does not suggest otherwise. Accordingly, this exclusion has no conceivable application here.

**4. Exclusion k**

Exclusion k excludes coverage for property damage to

> (6) that particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it.

"Your Work" is defined as "work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations." In Integrity's view, exclusion k(6) incorporates the "business risk" concepts discussed above and excludes any damages caused by the contractor's work on the property the contractor is working on.

Check Builders and the plaintiffs do not seem to take issue with Integrity's construction of the exclusion. Nevertheless, by its plain terms, the exclusion only excludes coverage for that "particular part" of property that is damaged by the contractor's work. That is not the extent of what is at issue here, however; instead, the plaintiffs are also claiming coverage for work on *other* parts of the property that was damaged *as a result* of Check Builders' work. By its plain terms, then, the exclusion does not apply when the damage at issue is not to that "particular part" of the property on which the insured incorrectly performed work. Because the plaintiffs allege that some of the damage here was sustained on work not performed by Check Builders, the exclusion does not wipe out all coverage.

In addition, Check Builders and the plaintiffs note that there is an exception to the paragraph (6) exclusion: "paragraph 6 . . . does not apply to 'property damage' included in the 'products-completed operations hazard'."

8

The policy defines the hazard as follows:

> 'Products - Completed Operations Hazard' includes all 'bodily injury' and 'property damage' arising out of 'your product' or 'your work' except:
> (1) Products that are still in your physical possession; or
> (2) Work that has not yet been completed or abandoned. . .
> (b) 'your work' will be deemed completed at the earliest of the
> following times:
> (1) When all of the work called for in your contract has been completed.
> (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
> (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Because the exception to the exclusion is so broad–it encompasses all 'property damage' arising out of 'your product' or 'your work,' with a few exceptions–plaintiffs and Check Builders argue exclusion k(6) does not apply here. The products-completed hazard includes all property damage resulting from completed work, and thus the exception to exclusion k(6) means that the exclusion does not exclude damage resulting from completed work.

Integrity argues that the damage did not result from work that was completed, but its argument to that effect is confusing and strained. (Reply Br. at 7.) The policy states that "work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." That is what is alleged here: the house was completed, but ongoing problems needed attention and repair, which led to other problems. The "Products-Completed Operations Hazard" exception therefore applies, which means the exclusion itself is inapplicable. *See American Family Mut. Ins. Co. v. American Girl, Inc.,* 2004 WI 2, 673 N.W.2d 65, 82 (Wis. 2004); *see also Kalchthaler v. Keller Const. Co.,* 591 N.W.2d 169, 173 (Wis. Ct. App. 1999)

("[W]hile Aetna argues that the damage did not occur after completion because the damage was the faulty workmanship itself, we are not persuaded. The damage occurred when water leaked through the windows and wrecked the interior. This was after completion. Aetna's claim that the damage was done when the windows were installed is too strained and we do not buy it.")

**5. Exclusion m**

Exclusion m excludes coverage for property damage "to your work arising out of it or any part of it and included in the products-completed operations hazard. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."[5] "Your Work" is defined as "work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations."

Plaintiffs and Check Builders raise two arguments against the application of this exclusion. First, they argue that some of the damaged materials were not Check Builders' own "work" because some of the construction materials–the plaintiffs focus on their custom windows–were provided by the plaintiffs themselves. Yet even so, the definition of "Your Work" incorporates such materials because they were "furnished in connection with" work performed by Check Builders. Thus, the exclusion views the project much as Integrity does–holistically, rather than as the sum of several distinct parts–and coverage is thus excluded for any materials furnished in connection with the

---

[5] The exception to the exclusion found in the exhibits varies materially from how it is set forth in Integrity's proposed findings of fact and briefs. For instance, on page 5 of its initial brief, Integrity states that the exception reads, "This exclusion does not apply if performed by a subcontractor." Yet in the exhibits, the case law interpreting the CGL policy and in the portion of its brief describing the excess policy language the exception reads, "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Brief at 9-10.)

building of the house (with the pertinent exception noted below).[6] Accordingly, I find that coverage is excluded for any materials the plaintiffs themselves supplied.

The other argument against application of Exclusion m is that it does not apply if the damaged work was performed by a subcontractor: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." The plaintiffs assert that some damaged parts of the house–plaster, insulation, painting, etc.–were the work of subcontractors and argue that the exclusion does not apply to such work. (Durbrow Aff., ¶ 7.) Integrity's response to this argument relies largely on a mischaracterization of the exception: in its view, it only applies to work that was damaged *by* subcontractors (of which there is no evidence here). It cites *Kalchthaler v. Keller* for that principle, but that case was merely describing part of the exception. 591 N.W. at 174. In fact, the court noted earlier in its decision that the entire exception read, as here: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *Id.* at 172. The plain language of the exception thus eliminates the exclusion to the extent any damaged work was

---

[6] The plaintiffs also argue that even though the house was built by Check Builders, damage to that house was not damage to Check's "work" because the house was built in 1998, prior to the damage caused after Check performed repair work under a 2001 agreement. In their view, it is only coincidence that Check was both the repairer and the builder, and Integrity should not benefit from this coincidence. Put another way, they assert that we should imagine Check Builders's 2001 repair work (which caused the damage) was work done to an existing, complete house built by some anonymous *other* builder: "Check Builders should not lose its insurance coverage because it was involved in both the initial construction and the repair work. If the initial construction had been performed by 'ABC Builders' and Check Builders was later hired for the repair work, there would be no issue about coverage." (Pls.' Br. at 10.) But Check should not be able to gain coverage that would otherwise have been excluded by entering into a separate repair agreement after its allegedly defective work first becomes apparent. There is simply no support for such the distinction plaintiffs draw in the language of the policy. The policy is meant (as discussed herein) to exclude repairs to the contractor's own work, regardless of when that work was performed.

11

performed by a subcontractor, and Integrity makes no effort to show that such was not the case here.

The Fourth Circuit recently discussed the same exclusion:

> It is undisputed that the backfill work was performed on Limbach's behalf by a subcontractor, Legacy Builders. Since "your work," as defined in the insurance policy, includes work performed on an insured's behalf, Zurich [the insurer] maintains that the "your work" exclusion precludes coverage for the cost of repairing the damaged backfill. We disagree.
>
> The "your work" exclusion contains an exception for work performed by a subcontractor. The exclusion specifically states that it "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

*Limbach Co. LLC v. Zurich American Ins. Co.,* 396 F.3d 358, 362 (4th Cir. 2005); *see also Weis Builders,* 2004 WL 1630871, *5 ("exclusion (l) does not apply to exclude coverage for those claimed damages that involve damaged work or work out of which the damage arises if that work was performed by a subcontractor on Weis's behalf.") It is puzzling that Integrity ignores the plain language of its own policy, especially since this is the core of its argument against coverage. In any event, because the exception to the exclusion excepts work performed by subcontractors, I find no basis to apply the exclusion here in the manner Integrity asserts.

**6. Exclusion n**

Finally, Integrity also cites exclusion n, which excludes "property damage to impaired property or property that has not been physically injured, arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in your product or your work." "Impaired property," in turn, means

> tangible property, other than 'your product' or 'your work' that cannot be used or [is] less useful because:
> a. it incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or

12

  b. you have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
(1) the repair, replacement, adjustment or removal of 'your product' or 'your work';
or
(2) your fulfilling the terms of the contract or agreement.

By its own terms, the exclusion applies only to "tangible property *other than . . . 'your work.'*" That is, the exclusion is meant to apply to the situation in which the insured's own work impairs *other* property. All along, Integrity has been taking a holistic approach, arguing that the house is completely Check Builders' own work. As discussed above, Integrity is largely correct, inasmuch as the entire house is incorporated into the definition of "your work," which is broadly defined to include "work or operations performed by you *or on your behalf*; and materials, parts or equipment furnished in connection with such work or operations." The only damage at issue here is damage caused to Check Builders' "work," which does not qualify as "tangible property *other than . . . 'your work'.*" Accordingly, the exclusion does not apply.

**7. Economic Loss Doctrine**

Finally, Integrity asserts that the plaintiffs' action fails under the economic loss doctrine. In a nutshell, the doctrine holds that when the duties allegedly breached arise out of a contract, the contract's own provisions control and the plaintiffs are barred from seeking extracontractual (i.e., tort) damages. "From its inception, the doctrine has been based on the understanding that contract law, and particularly the law of warranty, is better suited than tort law for dealing with purely economic loss in the commercial arena." *Insurance Co. of North America v. Cease Elec. Inc.,* 688 N.W.2d 462, 466 (Wis. 2004). I first note that the discussion in Sections 1 through 6 makes clear that the damages the plaintiffs seek that might be covered by the Integrity policies are not damages stemming from a traditional warranty action. That is, the parties are in agreement that there is no

13

coverage for damages to Check Builders' own work, and all that is at issue here (as far as coverage is concerned) is damage caused to the work of others. Thus, it is unclear how the economic loss doctrine would apply here, at least as to the coverage issue.

But even if Integrity is correct that the doctrine applies to this case, it does not follow that it is off the hook in providing a defense to Check Builders. The economic loss doctrine, in short, says nothing about insurance coverage in general nor does it speak to the policy language at issue here. That is, whether the claims are couched in terms of negligence or contract, there is still an "occurrence" that triggers coverage (at least arguably) which implicates Integrity's continuing duty to defend this action. "The economic loss doctrine is a remedies principle. It determines how a loss can be recovered--in tort or in contract/warranty law. It does not determine whether an insurance policy covers a claim, which depends instead upon the policy language." *American Girl, Inc.,* 2004 WI 2, 673 N.W.2d at 75. Put another way, the economic loss doctrine is a form of preemption that transforms, recharacterizes or narrows claims rather than defeating them outright. As such, it does not provide Integrity with a silver bullet to defeat coverage.

**III. Conclusion**

In sum, it is apparent that much, if not most, of the damage suffered by the plaintiffs will not be covered under the policies here because costs of repairing or replacing the insured's own defective work are not covered. Thus, to the extent Integrity's motion seeks a declaration that no coverage exists for damages caused to Check Builders' own work (regardless of when the work was performed), the motion is GRANTED. I also conclude that no coverage exists for damages to the plaintiffs' property that was provided by the plaintiffs but installed by Check Builders. But to the extent the plaintiffs are seeking recovery for damage to the work of subcontractors, coverage may

14

exist. Because there are genuine issues of fact remaining regarding such damages, Integrity's motion for summary judgment must be denied on that issue; it must, therefore, continue to provide its insured a defense to this action.

Dated this   11th   day of July, 2006.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge